**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| STEPHEN N. FOX & NORA FOX JTWROS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED DEVELOPMENT FUNDING III, UMT SERVICES, INC., UMTH GENERAL SERVICES, L.P., UMTH LAND DEVELOPMENT, L.P., UMT HOLDINGS, L.P., HOLLIS M. GREENLAW, TODD ETTER, CARA D. OBERT and BEN L. WISSINK,<br><br>Defendants. | Civil Action No. 4:20-cv-00150-O<br><br>Honorable Reed O'Connor |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF (I) FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT; (II) FINAL CERTIFICATION OF THE SETTLEMENT CLASS; AND (III) FINAL APPROVAL OF THE PLAN OF ALLOCATION**

# TABLE OF CONTENTS

Page (s)

TABLE OF AUTHORITIES ..........................................................................................................(ii)

I.  INTRODUCTION .......................................................................................................... 1

II.  FACTUAL AND PROCEDURAL HISTORY ................................................................. 2

III.  ARGUMENT................................................................................................................... 8

    A.  The Proposed Settlement is Fair, Reasonable and Adequate.................................... 8

    B.  The Settlement is Entitled to a Presumption of Fairness ......................................... 9

    C.  The *Reed* Factors Support Final Approval of the Settlement ................................ 11

        i.  There is no Fraud or Collusion Behind the Settlement.............................. 11

        ii.  The Stage of the Proceedings and the Amount of Discovery Completed.. 12

        iii.  The Probability of Success on the Merits .................................................. 13

            1.  Risks in Proving Liability ................................................................. 13

            2.  Risks in Proving Loss Causation and Damages................................. 14

        iv.  The Settlement Falls Within the Range of Reasonableness....................... 15

        v.  The Complexity, Expense, and Likely Duration of Litigation ................. 16

        vi.  The Opinions of Class Counsel, the Class Representatives, and Absent Class Members............................................................................................ 18

    D.  The Court Should Certify the Settlement Class..................................................... 19

    E.  The Notice Meets the Requirements of Rule 23 and Satisfies Due Process.......... 19

    F.  The Plan of Allocation is Reasonable and Adequate............................................. 20

IV.  CONCLUSION.............................................................................................................. 22

**TABLE OF AUTHORITIES**

__CASES__                                                                    __Page(s)__

*In re Advanced Battery Techs., Inc. Secs. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ...............................................................................20

*In re American Bank Note Holographics*,
    127 F. Supp. 2d. 418 (S.D.N.Y. 2001) ....................................................................21

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)......................................................................20

*Beecher v. Able*,
    575 F.2d 1010 (2d Cir. 1978)....................................................................................20

*Billitteri v. Securities America, Inc.*,
    No. 3:09-cv-01568-F, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011)...................8, 12

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981).......................................................................................................9

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).....................................................................................14

*In re Chicken Antitrust Litig.*,
    669 F.2d 228 (5th Cir 1982) ..............................................................................15, 20

*Clark v. Lomas & Nettleton Fin. Corp.*,
    79 F.R.D. 641, 654 (N.D. Tex. 1978),
    *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980) ...........................................17

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) .............................................................................8, 10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    No. 3:02-cv-11552-M, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ...............15, 16

*Faircloth v. Certified Fin. Inc.*,
    Civ. No. 99-3097 Section T (3), 2001 WL 527489 (E.D. La. May 16, 2001)...........11

*Fernea v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
   No. 03-09-00566-CV, 2011 WL 2769838 (Tex. App. July 12, 2011),
   *judgment withdrawn*, *appeal dismissed*, No. 03-09-00566-CV,
   2014 WL 5801862 (Tex. App. Nov. 5, 2014) .......................................................13

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................21

*Grant Thornton LLP v. Prospect High Income Fund*,
   314 S.W.3d 913 (Tex. 2010) .................................................................................13

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ..........................................................................20

*Lelsz v. Kavanagh*,
   783 F. Supp. 286 (N.D. Tex. 1991) .........................................................................9

*Lutheran Bhd. v. Kidder Peabody & Co.*,
   829 S.W.2d 300 (Tex. App. 1992) .........................................................................13

*Manchaca v. Chater*,
   927 F. Supp. 962 (E.D. Tex. 1996) ..................................................................12, 16

*Marcus v. J.C. Penney Co., Inc.*,
   Civ. No. 6:13-cv-736, 2017 WL 6590976 (E.D. Tex. Dec. 18, 2017) ..................21

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................20

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*,
   991 S.W.2d 787 (Tex. 1999) .................................................................................13

*McNary v. Am. Sav. & Loan Ass'n*,
   76 F.R.D. 644 (N.D. Tex. 1977) ......................................................................11, 15

*In re MicroStrategy, Inc. Sec. Litig.*,
   150 F. Supp. 2d 896 (E.D. Va. 2001) ....................................................................19

*Murillo v. Texas A & M Univ. Sys.*,
   921 F. Supp. 443 (S.D. Tex. 1996) .........................................................................9

*In re Mut. Funds Inv. Litig.*,
   No. MDL 1486, 2010 WL 2342413 (D. Md. May 19, 2010) ..................................19

iii

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
  MDL No. 1023, 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000)......................................................21

*Newby v. Enron Corp.*,
  394 F.3d 296 (5th Cir. 2004) .................................................................................................9, 13

*Parker v. Anderson*,
  667 F.2d 1204 (5th Cir. 1982), *cert denied*, 459 U.S. 828 (1982)........................................9, 15

*Reed v. Gen. Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) .................................................................................................9, 11

*Schwartz v TXU Corp.*,
  No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .................................18, 21

*In re Seitel, Inc. Sec. Litig.*,
  245 F.R.D. 263 (S.D. Tex. 2007)..................................................................................................17

*Sheick v. Auto. Component Carrier LLC*,
  No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)...........................................12

*Smith v. Crystian*,
  91 F. App'x 952 (5th Cir. 2004), *cert denied sub nom*,
  *Crystian v. Tower Loan of Mississippi Inc.*, 543 U.S. 1089 (2005)............................................8

*Strougo ex rel. Brazilian Equity Fund v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)....................................................................................17, 18

*In re Train Derailment Near Amite, La.*,
  MDL No. 1531 - Section A, 2006 WL 1561470 (E.D. La. May 24, 2006).........................18, 19

*Turner v. Murphy Oil USA, Inc.*,
  472 F. Supp. 2d 830 (E.D. La. 2007)............................................................................................18

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) .........................................................................................................8

*United States v. Texas Education Agency*,
  679 F.2d 1104 (5th Cir. 1982) .................................................................................................. 8, 9

*Vaughn v. Am. Honda Motor Co.*,
  627 F. Supp. 2d 738 (E.D. Tex. 2007)...........................................................................................18

iv

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ......................... 15


**<u>STATUTES & RULES</u>**

Federal Rules of Civil Procedure
23 ................................................................................................................ 19, 20
23(a) ..................................................................................................................... 19
23(b)(3) ................................................................................................................ 19
23(e) ....................................................................................................................... 1

Texas Securities Act .................................................................................... 2, 3, 4, 13
Tex. Rev. Civ. Stat. Ann. Art. 581-33-A ........................................................ 2, 3, 4
Tex. Rev. Civ. Stat. Ann. Art. 581-33-F .............................................................. 13
Tex. Rev. Civ. Stat. Ann. Art. 581-33-F(1) ................................................... 2, 3, 4
Tex. Rev. Civ. Stat. Ann. Art. 581-33-F(2) ................................................... 2, 3, 4

Lead Plaintiff, Stephen N. Fox and Nora Fox JTWROS ("Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this unopposed motion pursuant to Fed. R. Civ. P. 23(e) seeking: (i) final approval of the proposed Settlement set forth in the Stipulation and Agreement of Settlement dated January 5, 2021 (the "Stipulation");[1] (ii) final certification of the proposed Settlement Class.[2] Plaintiffs respectfully submit that the settlement should be approved.[3]

## I.   INTRODUCTION

Plaintiffs have reached an agreement with Defendants to settle this action for all cash consideration (the "Settlement"). The terms of the Settlement are set forth in the Stipulation and were previously presented to the Court in connection with Plaintiffs' motion for preliminary approval of the Settlement. The consideration for the settlement is a series of payments to be made over an approximately two-year period according to a schedule in the Stipulation totaling $2.35 million.

The parties engaged in months of vigorous, extensive, and hard-fought negotiations regarding the terms of the proposed Settlement. The Settlement is, therefore, the result of arms'-length negotiations conducted by informed and experienced counsel. As discussed in greater detail

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, which was previously attached to the motion for preliminary approval as Exhibit 1.

[2] Because the date for Class Members to object or opt-out of the proposed Settlement is not until April 22, 2021, Plaintiffs' Counsel will submit an updated Proposed Final Order on May 6, 2021, in connection with the reply papers in connection with this motion in order to accurately reflect any additional opt-outs between the filing of this document and the deadline. A proposed final order was previously submitted in connection with Plaintiffs' motion for preliminary approval.

[3] Pursuant to Local Rule 7.1(b), on April 8, 2021, counsel for Defendants confirmed to Plaintiffs' Counsel that Defendants do not oppose the motion for final approval.

below, Plaintiffs and Lead Counsel believe that the proposed Settlement meets the standards for final approval and is in the best interests of the putative Class.  Indeed, the lack of any objection to any aspect of the Settlement whatsoever strongly supports Plaintiffs' motion.  Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

## II.    FACTUAL AND PROCEDURAL HISTORY

On November 21, 2018, Scharlene Brooks ("Brooks") filed a putative class action complaint against the Defendants and Whitley Penn LLP ("Whitley Penn") on behalf of participants in the DRIP in the United States District Court for the Northern District of Texas, purporting to allege: violations of the Texas Securities Act (the "TSA") pursuant to Tex. Rev. Stat. Arts. 581-33-A against UDF III, 581-33-F(1) against all Defendants except for UDF III, 581-33-F(2) against Whitley Penn and all Defendants except UDF III; and claims for negligence against Whitley Penn, breach of fiduciary duties against UDF III and UMTH LD, and aiding and abetting breach of fiduciary duties against Whitley Penn and all Defendants except UDF III and UMTH LD. The action was styled *Brooks v. United Development Funding III, et al.*, No. 3:18-cv-03097-M (the "*Brooks* Action") and was assigned to the docket of the Honorable Judge Barbara M.G. Lynn.  See the Declaration of Matthew M. Guiney in Support of Motion for Final Approval and for an Award of Attorneys' Fees ("Guiney Declaration") at ¶ 9.

On February 4, 2019, Plaintiffs filed a putative class action complaint against the Defendants and Whitley Penn on behalf of participants in the DRIP in the United States District Court for the Northern District of Texas, purporting to allege: violations of the TSA pursuant to Tex. Rev. Stat. Arts. 581-33-A against UDF III, 581-33-F(1) against all Defendants except for UDF III, 581-33-F(2) against Whitley Penn and all Defendants except UDF III; and claims for negligence against Whitley Penn, breach of fiduciary duties against UDF III and UMTH LD, and

aiding and abetting breach of fiduciary duties against Whitley Penn and all Defendants except UDF III and UMTH LD.  The action, styled *Steven N. Fox & Nora Fox JTWROS v. United Development Funding III, et al.*, No. 3:19-cv-274-L (the "*Fox* Action"), was assigned to the docket of the Honorable Judge Sam A. Lindsay.  Guiney Declaration at ¶ 10.

On March 4, 2019, the Court transferred the *Fox* Action to the docket of the Honorable Judge Barbara M.G. Lynn and ordered that the *Fox* Action would henceforth carry the suffix letter "M."  (*Fox* Action Dkt. No. 8).  Guiney Declaration at ¶ 11.

On April 11, 2019, pursuant to an agreed motion, the Court entered an Order consolidating the *Brooks* Action and the *Fox* Action under case no. 3:18-cv-03097-M (the "Action").  (Dkt. No. 48).  Guiney Declaration at ¶ 12.

On May 9, 2019, Brooks and Plaintiffs filed their Amended Class Action Complaint in the Action, purporting to allege: violations of the TSA pursuant to Tex. Rev. Stat. Arts. 581-33-A against UDF III, 581-33-F(1) against all Defendants except for UDF III, 581-33-F(2) against Whitley Penn and all Defendants except UDF III; and claims for negligence against Whitley Penn, breach of fiduciary duties against UDF III and UMTH LD, and aiding and abetting breach of fiduciary duties against Whitley Penn and all Defendants except UDF III and UMTH LD.  (Dkt. No. 50).  Guiney Declaration at ¶ 13.

On June 10, 2019, Defendants and Whitley Penn filed their respective motions to dismiss the Amended Class Action Complaint in the Action.   Guiney Declaration at ¶ 14.

On September 3, 2019, the Court transferred the Action to the docket of the Honorable Judge Brantley Starr and ordered that the Action would henceforth carry the suffix letter "X." Guiney Declaration at ¶ 15.

On February 5, 2020, the Court transferred the Action to the Fort Worth Division, where it was ultimately assigned to the docket of the Honorable Judge Reed C. O'Connor under case no. 4:20-cv-00150-O.  Guiney Declaration at ¶ 16.

On April 15, 2020, the Court entered an Order granting in part and denying in part the motions to dismiss filed by the Defendants and granting the motion to dismiss filed by Whitley Penn.  (Dkt. No. 89).  In its Order, the Court limited the Class Period to November 21, 2013 through November 21, 2018, inclusive.  Guiney Declaration at ¶ 17.

On April 29, 2020, Brooks and Plaintiffs filed their Second Amended Class Action Complaint in the Action, alleging: violations of the TSA pursuant to Tex. Rev. Stat. Arts. 581-33-A against UDF III, 581-33-F(1) against all Defendants except for UDF III, 581-33-F(2) against Whitley Penn and all Defendants except UDF III; and claims for breach of fiduciary duties against UMTH LD, and aiding and abetting breach of fiduciary duties against Whitley Penn and all Defendants except UMTH LD.  (Dkt. No. 92).  Guiney Declaration at ¶ 18.

Following motion practice, on May 28, 2020, Brooks and Plaintiffs filed their Corrected Second Amended Class Action Complaint (the "Complaint") in the Action, alleging: violations of the TSA pursuant to Tex. Rev. Stat. Arts. 581-33-A against UDF III, 581-33-F(1) against all Defendants except for UDF III, and 581-33-F(2) against all UDF Entity Defendants except UDF III.  (Dkt. No. 109).  Guiney Declaration at ¶ 19.

On May 29, 2020, the Court entered a final judgment dismissing all claims against Whitley Penn with prejudice.  (Dkt. No. 113).  Guiney Declaration at ¶ 20.

On June 1, 2020, the Court entered an Order requiring, *inter alia*: (a) Plaintiffs to file their Motion for Class Certification on or before July 31, 2020; (b) Defendants to file their response and brief in opposition to the Motion for Class Certification on or before August 21, 2020; (c); Plaintiffs

to file their reply in support of the Motion for Class Certification on or before September 7, 2020; and (d) the Parties to complete fact discovery by December 24, 2020. (Dkt. No. 114). Guiney Declaration at ¶ 21.

On June 5, 2020, Defendants filed a motion to dismiss the Complaint, which the Court denied on June 18, 2020 after expedited briefing. (Dkt. No. 124). On July 1, 2020, the Parties executed a stipulation dismissing with prejudice all claims alleged in the Action by Brooks, which was filed with the Court that day. (Dkt. No. 125). The Defendants filed their respective answers to the Complaint on July 2, 2020. Plaintiffs filed their Motion for Class Certification on July 31, 2020. (Dkt. No. 135). Guiney Declaration at ¶ 22.

On August 7, 2020, the Parties filed a Joint Motion to Stay requesting a stay of this Action for the purpose of engaging in settlement discussions. (Dkt. No. 138). The Court granted the Parties' Joint Motion by Order dated August 7, 2020. (Dkt. No. 139). Guiney Declaration at ¶ 23.

Although the Parties made progress toward a potential settlement during the term of the stay imposed on August 7, 2020, they did not reach an agreement in principle. The Parties accordingly filed additional Joint Motions to Stay for the purpose of discussing settlement, which the Court granted on September 22, 2020 and October 7, 2020. (Dkt. Nos. 141, 143). Guiney Declaration at ¶ 24.

On October 23, 2020, the Parties notified the Court that they had reached agreement on settlement in principle (subject to further agreement on mutually acceptable comprehensive documentation and Court approval) which, if ultimately approved by the Court, would resolve the claims alleged against the Defendants in the Action, and they were working on a Memorandum of Understanding ("MOU") to memorialize the essential terms of their agreement. (Dkt. No. 144).

The Parties requested that the Court stay the Action until December 7, 2020, to afford them time to agree upon and execute the MOU.  Guiney Declaration at ¶ 25.

The Court denied the Parties' request for a stay but allowed the Parties through November 6, 2020 to notify the Court that they had agreed upon a MOU.  (Dkt. No. 145).  Guiney Declaration at ¶ 26.

On November 6, 2020, the Parties filed a Joint Notice of Settlement and Proposed Schedule for Filing of Preliminary Approval advising the Court that they had executed a MOU and requesting a stay of proceedings in order to permit the Parties to complete confirmatory discovery and submit a motion for preliminary approval of their proposed settlement.  (Dkt. No. 146).  Guiney Declaration at ¶ 27.

The Court granted the Parties' request for a stay until January 5, 2021 by Order dated November 9, 2020.  (Dkt. No. 147).  In the same Order, the Court directed the Parties to file a motion for preliminary approval of their settlement on or before January 5, 2021.  Guiney Declaration at ¶ 28.

Plaintiffs filed the motion for preliminary approval on January 5, 2021.  Guiney Declaration at ¶ 29.

On January 25, 2021, the Court preliminarily approved the Settlement and ordered the Claims Administrator to disseminate notice of the Settlement to the Settlement Class, set the date for the Final Approval Hearing and other relevant deadlines.  (Dkt. No. 151).  Guiney Declaration at ¶ 30.

The Settlement follows more than two years of hard-fought litigation.  By the time the Settlement was reached, Plaintiffs and their counsel were well-informed about the strengths and weaknesses of the claims and Defendants' defenses. Prior to reaching the Settlement, Plaintiffs'

Counsel: conducted a comprehensive investigation into the allegedly wrongful acts, which included, among other things, review and analysis of Securities and Exchange Commission filings by United Development Funding III, review and analysis of public reports and news articles concerning Defendants; various verified complaint in shareholder derivative actions filed against Defendants by UDF III and UDF Development Funding IV and V ("UDF IV" and UDF V"); responded to each Defendants' numerous motions to dismiss the pleadings in this case with extensive opposition briefing and several decisions of this Court denying in part, granting in part Defendants' motions; reviewed a detailed PCAOB finding resulting from a regulatory investigatory process; and reviewed thousands of pages of documents produced by UDF including III's current financial position. Counsel also defeated the motion to dismiss and a renewed motion to dismiss, defeated Defendants' Rule 11 motion, researched and drafted the motion for class certification, produced client documents and reviewed third party discovery produced in connection with the class certification motion. Counsel also drafted all preliminary and final approval documents, including all notice and claim forms, and Plaintiffs' Counsel continues to communicate with the claims administrator and claim inquiries. Guiney Declaration at ¶ 31.

Plaintiffs' Counsel also firmly believes that this Settlement is an excellent recovery for the Settlement Class based on their extensive investigation, past experiences in litigating similar cases, the significant risk, expense, and uncertainty of continued litigation, and the serious dispute between the parties concerning the merits of the case and damages. Members of the Settlement Class appear to agree. Pursuant to the Preliminary Approval Order, notification of the Settlement was mailed to 2,668 Settlement Class Members on March 9, 2021. Declaration of Josephine Bravata Regarding Mailing of Notice and Proof of Claim ("Bravata Decl.") (attached as Exhibit E to the Guiney Declaration). To date, only 14 exclusion requests representing 19 accounts of

purported Settlement Class Members have sought to opt out of the Settlement.  Bravata Decl. ¶ 6. And, although the objection deadline is April 22, 2021, to date, not a single Settlement Class Member has filed an objection to any aspect of the Settlement or the Plans of Allocation.  ¶7.  This is strong evidence that the Settlement is fair, adequate and reasonable. *Billitteri v. Sec. Am., Inc.*, No. 3:09-CV-01568-F, 2011 WL 3586217, at \*14 (N.D. Tex. Aug. 4, 2011) ("The extremely small number of opt-outs suggests a favorable opinion by the absent class members.").  For the reasons set forth herein, and in the accompanying Guiney Declaration, Plaintiffs respectfully request that the Court certify the Settlement Classes and finally approve the Settlement and Plans of Allocation. Guiney Declaration at ¶ 32.

## III.    ARGUMENT

### A.    The Proposed Settlement is Fair, Reasonable and Adequate

The standard for approving a proposed class action settlement is whether the proposed settlement is "'fair, adequate and reasonable and is not the product of collusion between the parties.'" *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *accord Union Asset Mgmt. Holding A.G. v. Dell, Inc*., 669 F.3d 632, 639 (5th Cir. 2012). When a settlement, such as this one, is reached as the result of arm's length negotiations between competent counsel on both sides, the settlement is presumptively valid and "ordinarily may be overcome only if its provisions are not within reasonable bounds or are illegal, unconstitutional or against public policy." *United States v. Texas Education Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982).

The Court has broad discretion in approving class action settlements. *See Smith v. Crystian*, 91 F. App'x 952, 955 (5th Cir. 2004) ("[A] district court's approval of a settlement is given great deference and 'will not be upset unless the court clearly abused its discretion.'") (citation omitted),

*cert denied sub nom*, *Crystian v. Tower Loan of Mississippi Inc.*, 5443 U.S. 1089 (2005); *see also Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982), *cert. denied*, 459 U.S. 828 (1982).  This discretion is applied to the well-established, six-factor *Reed* test for determining whether a proposed settlement is fair, reasonable, and adequate:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp*., 703 F.2d 170, 172 (5th Cir. 1983); *see also Enron*, 394 F.3d at 301. As demonstrated below, the proposed Settlement is presumptively fair, and application of the six-factor *Reed* test makes clear that final approval is warranted.

### B.     The Settlement is Entitled to a Presumption of Fairness

Because a court does "not decide the merits of the case or resolve unsettled legal questions" when reviewing a proposed settlement, *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981), a settlement negotiated at arm's-length by experienced counsel is presumed fair and adequate. *See, e.g., Tex. Educ. Agency*, 679 F.2d at 1108; *Murillo v. Tex. A&M Univ. Sys.*, 921 F. Supp. 443, 445 (S.D. Tex. 1996).  So long as "there is no hint that the settlement has been motivated by any improper considerations or at the expense of unrepresented persons, and it appears to have been arrived at after mature, deliberate and informed consideration on both sides," the Court should not "substitute [its] 'own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.'" *Tex. Educ. Agency*, 679 F.2d at 1108 (citation omitted); *see also Lelsz v. Kavanagh*, 783 F. Supp. 286, 297 (N.D. Tex. 1991) ("'[A] presumption of correctness is said to attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery.'") (quoting MANUAL FOR COMPLEX LITIGATION §30.41 (2d Fed.

1985)); *Cotton*, 559 F.2d at 1330 (recognizing that significant weight is given to the opinion of class counsel concerning whether the settlement is in the best interest of the class and the court is not to substitute its own judgment for that of counsel).

The parties in this case reached the Settlement only after protracted and intense arm's-length negotiations. There was no collusion, and no party or Settlement Class Member has raised such a concern. Indeed, the case was vigorously litigated. During the course of this litigation, Plaintiffs' Counsel: conducted a comprehensive investigation into the allegedly wrongful acts, which included, among other things, review and analysis of Securities and Exchange Commission filings by United Development Funding III, review and analysis of public reports and news articles concerning Defendants; various verified complaint in shareholder derivative actions filed against Defendants by UDF III and UDF Development Funding IV and V ("UDF IV" and "UDF V"); responded to each Defendants' numerous motions to dismiss the pleadings in this case with extensive opposition briefing and several decisions of this Court denying in part, granting in part Defendants' motions; reviewed a detailed PCAOB finding resulting from a regulatory investigatory process; and reviewed thousands of pages of documents produced by UDF including III's current financial position. Counsel also defeated the motion to dismiss and a renewed motion to dismiss, defeated Defendants' Rule 11 motion, researched and drafted the motion for class certification, produced client documents and reviewed third party discovery produced in connection with the class certification motion. Counsel also drafted all preliminary and final approval documents, including all notice and claim forms, and Plaintiffs' Counsel continues to communicate with the claims administrator and claim inquiries. Guiney Declaration at ¶ 31.

As a result of these efforts, Plaintiffs' Counsel has a firm understanding of the strengths and weaknesses of their claims, and this understanding informed settlement negotiations. The

Settlement is, therefore, presumptively fair and reasonable. *See Faircloth v. Certified Fin. Inc.*, Case No. 99-3097, 2001 WL 527489, at *4 (E.D. La. May 16, 2001) ("there is typically an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations.").

### C.    The *Reed* Factors Support Final Approval of the Settlement

In evaluating a settlement, the "only question" for the Court to determine "is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval." *McNary v. Am. Sav. & Loan Ass'n*, 76 F.R.D. 644, 649 (N.D. Tex. 1977) (citation an internal quotation omitted). The Fifth Circuit has established a six-pronged test to determine the fairness of proposed settlements as set forth in *Reed*, above.  As demonstrated below, the settlement easily meets these six criteria.

### i.    There is no Fraud or Collusion Behind the Settlement

There was no collusion in the settlement of this action.  The settlement was reached only after protracted negotiating sessions of direct negotiations between the Parties' counsel.  These settlement discussions ultimately culminated in resolution of the Action.  In addition, Lead Counsel have many years of experience in litigating securities fraud class actions and director and officer misfeasance claims and have negotiated numerous other class settlements that courts throughout the country have approved.  *See* Guiney Declaration at Exhibits A – C.  Lead Counsel enjoy well-deserved reputations for skill and success in the prosecution and favorable resolution of securities class actions and other complex matters.  Defendants' counsel likewise includes firms with national reputations for the tenacious defense of class actions and other complex matters. Senior members from both sides negotiated the settlement.  Negotiations were hard fought and the

11

result of arm's-length negotiations between experienced counsel knowledgeable about the strengths and weaknesses of Plaintiffs' claims and potential defenses. The Parties were, without question, fairly and adequately represented in the course of these proceedings. Counsel's experience supports final approval of the settlement.

Moreover, pursuant to the proposed Plan of Allocation, the proceeds of the Settlement will be divided *pro rata* amongst Settlement Class Members based on their recognized losses as determined in the manner described in the Plan of Allocation. *See* Stipulation at Exhibit A-1. The fact that the proposed Settlement does not favor any class member or group of class members also "weighs against any evidence of fraud or collusion and in favor of approval." *Billitteri,* 2011 WL 3586217, at *10.

### ii.    The Stage of the Proceedings and the Amount of Discovery Completed

This Action has been actively litigated since commencement through the signing of the Stipulation on January 5, 2021. Lead Counsel conducted a thorough investigation into the claims asserted in the highly detailed complaints, and reviewing and analyzing voluminous publicly available documents. Lead Counsel also engaged in extensive briefing related to Defendants' numerous motions to dismiss the claims. This Court issued several rulings sustaining the claims alleged in the Second Amended Complaint. Thus, during the settlement discussions, Plaintiffs' Counsel had a solid understanding of the strengths and weaknesses of the case and were able to engage in a rigorous negotiation process with Defendants. There can be no doubt that the Parties reached the Settlement with a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996); *see also Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *19 n.3 (E.D. Mich. Oct. 18,

2010) ("[C]ourts do not require formal discovery so long as the parties have adequate information in order to evaluate the relative positions.") (citing *Enron*, 394 F.3d at 306  ("Formal discovery [is not] a necessary ticket to the bargaining table.")).

### iii.   The Probability of Success on the Merits

Plaintiffs and the Class faced formidable obstacles to recovery at trial, both with respect to liability and damages under their Texas Securities Act and their common law claims. Plaintiffs would have the burden of proving, among other things, primary violation; control person liability; and aiding and abetting liability of various of the UDF Defendants, under a body of legal precedent which imposes burdens to prove numerous elements. *Fernea v. Merrill Lynch Pierce Fenner & Smith, Inc.*, No. 03-09-00566-CV, 2011 WL 2769838, at *13, 15 (Tex. App. July 12, 2011), *judgment withdrawn*, *appeal dismissed*, No. 03-09-00566-CV, 2014 WL 5801862 (Tex. App. Nov. 5, 2014); *see also* Tex. Rev. Civ. Stat. Ann. Art.  581-33(F).  The common law claims variously require that Plaintiffs demonstrate with solid evidence, the duties owed to the UDF investors, breaches of that duty, and that breach of each Defendant proximately caused Plaintiffs' alleged damages.  *See Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 920 (Tex. 2010); *McCamish, Martin, Brown & Loeffler v. F.E  Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999); and *Lutheran Bhd. v. Kidder Peabody & Co.*, 829 S.W.2d 300, 309 (Tex. App. 1992) (writ granted w.r.m.) (cited with approval by *McCamish*, 991 S.W.2d at 791).

### 1.   Risks in Proving Liability

Although Plaintiffs believe that they would be successful and that the allegations of the complaints would ultimately be borne out by the evidence, Plaintiffs also recognize that they faced significant hurdles in proving liability and damages at trial.  For example, the UDF Defendants have argued, and would continue to argue, that liability was unwarranted because UDF and its

affiliates never engaged in any Ponzi-like conduct.  Defendants would likely point to independent counsel's investigation into whether UDF exhibited Ponzi-like characteristics, which ultimately found no evidence of fraud or misconduct by UDF IV.  Defendants would also likely point to other evidence, including evidence submitted in support of the lawsuit styled *United Development Funding, L.P. et al. v. J. Kyle Bass et al.*, Dallas County Court No. CC-17-06253-B (filed November 28, 2017), such as the various affidavits executed by percipient witnesses and submitted to the Dallas County Court and which were relied upon by Court in issuing favorable rulings to the UDF Defendants.  While Plaintiffs do not agree with those findings, a real risk existed that the same evidence could have convinced a jury in this case to deny Plaintiffs' claims.  Guiney Declaration at ¶ 33.

### 2.    Risks in Proving Loss Causation and Damages

Even if Plaintiffs were successful in establishing liability at trial, they would still face substantial risks in proving loss causation, proximate cause, and damages.  Defendants argued, and would continue to argue, that any alleged losses suffered by Settlement Class Members on their investments were not attributable to the alleged public misstatements but rather were the result of organized efforts to manipulate other publicly traded UDF entities' stock.  Issues relating to loss causation and damages of Plaintiffs' claims would have likely come down to a contested and unpredictable "battle of the experts."  In the absence of a settlement, there was a real risk that the Class would have recovered an amount significantly less than the total settlement amount, or even nothing at all. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001).

The maximum potential recovery is difficult to calculate because it depends on assumptions and estimates about the current value of the UDF III shares acquired in the DRIP for

$20 per share. Class members purchased 1,076,373.83 DRIP shares during the Class Period. If those shares are now assumed worthless, then the maximum damages are $20 per share or $21,527,476.60. Under that scenario, this settlement of $2.35 million recovers 10.92% of those damages. That is a very respectable settlement. If UDF III shares are now worth only $10 per share, damages are $10,763,738.30. Under that scenario, this settlement recovers 21.83% of damages. An outstanding result considering precedent. Guiney Declaration at ¶34. The substantial percentage of maximum damages recovered when viewed in the context of the risks and the uncertainties involved in continued litigation, weighs heavily in favor of approving the Settlement. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad non actionable factors such as general market conditions").

### iv.   The Settlement Falls Within the Range of Reasonableness

The determination of a "reasonable" settlement is not susceptible to a single mathematical equation yielding a particularized sum. The "focus of this factor is whether the settlement falls within the range of reasonableness." *Erica P. John Fund, Inc. v. Halliburton Co.,* No. 3:02-cv-11552-M, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Id.; Parker,* 667 F.2d at 1210 n.6 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (quotation and internal citation omitted); *McNary*, 76 F.R.D. at 650. To assess the reasonableness

of a proposed settlement seeking monetary relief, an inquiry "should contrast settlement rewards with likely reward if case goes to trial." *In re Chicken Antitrust Litig.*, 669 F.2d 228, 239 (5th Cir 1982); *Halliburton*, 2018 WL 1942227, at *5 (noting that "courts will compare the settlement amount to the relief the class could expect to recover at trial").

Here, Defendants have maintained, and would continue to maintain, that they did nothing wrong and that, as a result, Plaintiffs and the class did not suffer any damages.  Conversely, if Plaintiffs overcame *all* the obstacles to establishing liability, and completely prevailed on *all* their provable loss causation and damages theories at trial and on the inevitable appeal, the Settlement would equate to 10.92% of the total value of the DRIP shares.  But it is far from clear that UDF III DRIP shares are worthless and thus potential losses are far less than the over $20 million in losses extrapolated from theorizing that the DRIP shares were damaged by the full $20 per share price.  Guiney Declaration at ¶ 35.  Thus, this recovery is well within the range of other securities class action settlements and it is in fact higher than other settlements approved in the Fifth Circuit. *Halliburton*, 2018 WL 1942227, at *5 (noting approval of securities class action settlements that only represent, e.g., two percent of aggregated expected recovery).

In assessing the reasonableness of the recovery, it is important to look at sources available to pay a judgment, and whether the Settlement Class could actually collect on a larger judgment.

### v.    The Complexity, Expense, and Likely Duration of Litigation

Another reason for the Court to preliminarily approve the proposed Settlement is the complexity, duration, and risks of further litigation. *See Manchaca*, 927 F. Supp. at 966. Continued litigation would doubtlessly require additional large expenditures of time and money, with a significant risk that the Settlement Class would obtain a result far less beneficial than the one

provided by the Settlement.  For example, the complex issues involved in this action, and the sheer number of Defendants, against whom claims would have to be separately established would require extensive review of a significant number of documents by Counsel and require retaining experts in different subject areas, significant motion practice, and numerous depositions.

If the litigation were to proceed, Counsel would also have to obtain class certification.  And although Plaintiffs' Counsel had already moved for class certification, Defendants would have argued that certain issues would have prevented certification.  This process would have involved substantial briefing, extensive and costly expert involvement, possibly including deposition testimony by experts for both sides, and deposition testimony by Plaintiffs.  Guiney Declaration at ¶ 36.  It also would have involved substantial risk to the Settlement Class.  *See In re Seitel, Inc. Secs. Litig.*, 245 F.R.D. 263, 278 (S.D. Tex. 2007) (denying class certification).

Additional risk and cost would have followed. After completion of discovery, the parties would brief summary judgment and prepare for trial.  The costs and risks associated with litigating this action to a verdict, not to mention appeals, would be high.  The process would require hundreds of hours of this Court's time and resources. *See Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 651-52 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980) (the expense of trial can be "staggering" and carries with it the "distinct possibility" that the trial will result in no recovery).

Finally, if taken to trial, this action, with different defendants, many of which have diverging interests, potential cross-claims or indemnification claims against each other, and are represented by separate counsel, would easily require multiple additional years before a recovery, if any, was realized by class members.  *See Strougo ex rel. Brazilian Equity Fund v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("'it is beyond cavil that continued  litigation in this multi-

17

district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members'") (citation omitted).  This factor also supports final approval of the Settlement.

### vi.     The Opinions of Class Counsel, the Class Representatives, and Absent Class Members

"Counsel are the Court's main source of information about the settlement and therefore the Court will give weight to class counsel's opinion regarding the fairness of settlement."  *Turner v. Murphy Oil USA*, *Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007) (citation omitted). "[W]here  the parties have conducted an extensive investigation, engaged in significant fact- finding and Lead Counsel is experienced in class-action litigation, courts typically defer to the judgment of experienced trial counsel who has evaluated the strength of his case." *Schwartz v. TXU Corp.*, Case No. 3:02-CV-2243-K, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005) (citation and internal quotation omitted).

Here, Lead Counsel have considerable experience in complex class action and securities litigation and believe the settlement merits approval.  The Lead Plaintiffs also support the proposed Settlement. See Guiney Declaration at Exhibit D.  The remaining members of the Settlement Class also overwhelmingly support the proposed Settlement. While the deadline to file objections and requests for exclusion is April 22, 2021, to date, *no objections have been filed* and only 14 requests for exclusion (representing 19 accounts) have been received, *representing less than 1% of the class*.  See Guiney Declaration at ¶ 32 and at Exhibit E at ¶¶ 6-7.  This weighs heavily in favor of final approval of the proposed Settlement. *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007); *In re Train Derailment Near Amite, La.*, MDL No. 1531 - Section A, 2006 WL 1561470, at *13 (E.D. La. May 24, 2006) (lack of class member objections to the fairness of

18

the proposed settlement considered a factor in approving settlement); *In re MicroStrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896, 906 (E.D. Va. 2001) ("perhaps the most significant factor" in determining whether a settlement is adequate is the class's reaction to it).  For all the foregoing reasons, Plaintiffs respectfully submit that the proposed Settlement is fair, reasonable, and adequate.

### D.    The Court Should Certify the Settlement Class

The Court's January 2021 Preliminary Approval Order preliminarily certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3).  There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Plaintiffs' memorandum in support of preliminary approval of the Settlement, Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

### E.    The Notice Meets the Requirements of Rule 23 and Satisfies Due Process

The Court approved the notice program in the Preliminary Approval Order, and Plaintiffs' have executed the notice program in accordance with the provisions therein.  *See* Guiney Declaration at Exhibit E (the Bravata Declaration).  The claims administrator also established a website and toll free phone number for Class Member inquiries.  *See id.*  Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23. *See In re Mut. Funds Inv. Litig.*, MDL No. 1486, 2010 WL 2342413, at *6-7 (D. Md. May 19, 2010) (finding that a combination of postcard notice, summary notice, and a detailed notice available online "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements"); *In re Advanced Battery Techs., Inc. Secs. Litig.*, 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014) (collecting cases and stating that "[t]he use of a combination of a

mailed post card directing class members to a more detailed online notice has been approved by courts.").

### F.     The Plan of Allocation is Reasonable and Adequate

Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the same standards of review applicable to the settlement as a whole – the plan must be "fair, adequate and reasonable." *Chicken Antitrust*, 669 F.2d at 238. "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012) (citation and internal quotation omitted); *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) (same); *see also In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *13 (S.D.N.Y. Dec 23, 2009) ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel."). District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord Chicken Antitrust*, 669 F.2d at 238.

Here, the proposed Plan of Allocation is set forth in the Notice posted on the Settlement Website. *See* Guiney Declaration at Exhibit E (the Bravata Declaration). Plaintiffs' Counsel developed the Plan of Allocation in consultation with the claims administrator in order to equitably distribute the Settlement Amount. Specifically, the Notice advised Class Members that the Claims Administrator shall determine each Claimant's pro rata share of the Net Settlement Fund based upon each Claimant's Eligible Units. The formula is the basis upon which the Net Settlement Fund will be proportionately allocated to the Claimants. Each Claimant shall be paid the percentage of

the Net Settlement Fund that each Claimant's Eligible Units bears to the total Eligible Units of all Claimants.

Plaintiffs' Counsel believes that the proposed Plan of Allocation provides fair and reasonable methods to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as a result of the conduct alleged in the Action.  Guiney Declaration at ¶ 37.  Their opinion as to allocation is entitled to "considerable weight" by the Court in deciding whether to approve the plan. *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001). To date, no objections to the Plan of Allocation have been received, suggesting that the Settlement Class also find the Plans of Allocation to be fair and reasonable.  *In re Nasdaq Mkt.-Makers Antitrust Litig.*, MDL No. 1023, 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) (holding that the "small number of objections to the Proposed Plan" was entitled to "substantial weight" in approving the plan). Moreover, similar plans have repeatedly been approved by federal courts in securities class actions. *See, e.g.*, *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach."); *Marcus v. J.C. Penney Company, Inc.*, No. 6:13-CV-736, 2017 WL 6590976, at *5 (E.D. Tex. Dec. 18, 2017); *TXU Corp.*, 2005 WL 3148350, at *21.  For the above reasons, Plaintiffs respectfully submit that the proposed Plan of Allocation is fair and reasonable, and merits final approval from the Court.

## IV.   CONCLUSION

For the above reasons, Plaintiffs respectfully request the Court grant the unopposed Motion.

Dated:  April 8, 2021

**WOLF HALDENSTEIN**
**ADLER FREEMAN & HERZ LLP**


By:_____/s/ Matthew M. Guiney_____
MATTHEW M. GUINEY
270 Madison Avenue
New York, NY 10016
Tel: 212-545-4600
Fax: 212-686-0114
guiney@whafh.com

**SQUITIERI & FEARON, LLP**
LEE SQUITIERI
32 East 57th Street
12th Floor
New York, New York 10022
Telephone:  (212) 421-6492
lee@sfclasslaw.com

JOE KENDALL
State Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Telephone:  (214) 744-3000
Facsimile:  (214) 744-3015
jkendall@kendallawgroup.com


***Counsel for Plaintiffs***