**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| STEPHEN N. FOX & NORA FOX JTWROS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED DEVELOPMENT FUNDING III, UMT SERVICES, INC., UMTH GENERAL SERVICES, L.P., UMTH LAND DEVELOPMENT, L.P., UMT HOLDINGS, L.P., HOLLIS M. GREENLAW, TODD ETTER, CARA D. OBERT and BEN L. WISSINK,<br><br>Defendants. | Civil Action No. 4:20-cv-00150-O<br><br>Honorable Reed O'Connor |

**PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF LITIGATION EXPENSES;
MEMORANDUM OF LAW IN SUPPORT THEREOF**

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITES ......................................................................................................(ii)

I.     INTRODUCTION ......................................................................................................... 1

II.    FACTUAL AND PROCEDURAL HISTORY ................................................................. 2

III.   THE COURT SHOULD APPROVE THE FEE REQUEST .............................................. 2

       A.    Counsel Should be Compensated Based Upon the Benefits Created ...................... 2

       B.    The Court Should Award Attorneys' Fees Using the Percentage Method ............. 3

       C.    An Award of 30% is Appropriate Under the Percentage Method .......................... 5

       D.    The *Johnson* Factors Confirm the Reasonableness of the Requested Fee ............... 7

             i.     The Time and Labor Required ...................................................................... 8

             ii.    The Skill Required to Perform the Legal Service Adequately and the
                    Experience, Reputation, and Ability of the Attorneys ............................... 10

             iii.   The Preclusion of Other Employment ....................................................... 11

             iv.    The Customary Fee for Similar Work in the Community ......................... 11

             v.     Whether the Fee is Fixed or Contingent .................................................... 12

             vi.    Time Limitations Imposed by the Client or the Circumstances ............... 13

             vii.   The Amount Involved and the Results Obtained Support Approval ......... 13

             viii.  The Undesirability of the Case Supports Approval ................................... 14

             ix.    Nature and Length of the Professional Relationship with the Client......... 15

             x.     Awards in Similar Cases ............................................................................ 15

             xi.    Other Factors.............................................................................................. 15

       E.    A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee ..... 16

IV.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE
       NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ................. 18

V.     THE COURT SHOULD AWARD A SERVICE FEE ..................................................... 18

VI.    CONCLUSION............................................................................................................. 19

# TABLE OF AUTHORITIES

**CASES**                                                                                                                  **Page(s)**

*Aegis Ins. Holding Co., L.P. v. Gaiser,*
  No. 04-05-00938-CV, 2007 WL 906328 (Tex. App. Mar. 28, 2007) .........................................9

*Anixter v. Home-Stake Prod. Co.,*
  77 F.3d 1215 (10th Cir. 1996) ..............................................................................................12

*In re Apple Computer Sec. Litig.,*
  No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991)..................12

*In re BankAtlantic Bancorp, Inc. Sec. Litig.,*
  No. 07-61542-CIV-UNGARO,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd,*
  *Hubbard v. BankAtlantic Bancorp, Inc.,* 688 F.3d 713 (11th Cir. 2012) ...................................12

*Barrera v. Nat'l Crane Corp.,*
  Civ. No. SA-10-CV-0196 NN, 2012 WL 242828 (W.D. Tex. Jan. 25, 2012) ...........................6

*Barton v. Drummond Co.,*
  636 F.2d 978 (5th Cir. 1981) ..................................................................................................2

*Billitteri v. Sec. Am., Inc.,*
  No. 09-CV-1568-F, 2010 WL 6785484 (N.D. Tex. July 26, 2010) ...........................................9

*Blanchard v. Bergeron,*
  489 U.S. 87 (1989)..................................................................................................................3

*Blum v. Stenson,*
  465 U.S. 886 (1984)................................................................................................................3

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980)............................................................................................................2, 4

*Branca v. First USA Paymentech, Inc.,*
  No. 3:97-CV-2507-L, Order and Final Judgment,
  ECF No. 59 (N.D. Tex. Jan. 4. 2001) ......................................................................................7

*Buettgen v. Harless,*
  Civ. No. 3:09-cv-00791-K, 2013 WL 12303194 (N.D. Tex. Nov. 13, 2013) ................... *passim*

*Burford v. Cargill, Inc.*,
   Civ. A. No. 05-0283, 2012 WL 5471985 (W.D. La. Nov. 8, 2012) .................................. *passim*

*Cent. R.R. & Banking Co. v. Pettus*,
   113 U.S. 116 (1885) ...................................................................................................3

*Clark v. Lomas & Nettleton Fin. Corp.*,
   79 F.R.D. 641, 654 (N.D. Tex. 1978),
   *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980) .............................................9

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
   Civ. No. 6:12-1609, 2015 WL 965696 (W.D. La. Mar. 3, 2015) .................................5

*In re Combustion, Inc.*,
   968 F. Supp. 1116 (W.D. La. 1997) .......................................................................5, 7

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. 2007) ...........................................................................17

*Di Giacomo v. Plains All Am. Pipeline*,
   Civ. No. H-99-4137, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001)........................17

*In re DrKoop.com*,
   No. 1:00-CV-427-JRN, Order and Final Judgment,
   ECF No. 48 (W.D. Tex. Nov. 14, 2001) ...................................................................6

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   586 F. Supp. 2d 732 (S.D. Tex. 2008) .....................................................................14

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   No. 3:02-cv-11552-M, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ............................ *passim*

*Faircloth v. Certified Fin. Inc.*,
   Civ. No. 99-3097 Section T (3), 2001 WL 527489 (E.D. La. May 16, 2001)............................7

*Garza v. Sporting Goods Properties, Inc.*,
   Civ. No. SA-93-CA-1082, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996) ...............................6, 11

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) .............................................................................14

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...................................................................17

iii

*Jenkins v. Trustmark Nat'l. Bank*,
  300 F.R.D. 291 (S.D. Miss. 2014) ..................................................................2, 5, 6, 13

*Johnson v. Georgia Highway Express*,
  488 F.2d 714 (5th Cir. 1974) ................................................................... *passim*

*Jones v. Diamond*,
  636 F.2d 1364 (5th Cir. 1981), *overruled on other grounds by*
  *Int'l Woodworkers of Am., AFL-CIO & Its Local No. 5-376 v.*
  *Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986)..............................................12

*In re Lease Oil Antitrust Litig. (No. II)*,
  186 F.R.D. 403 (S.D. Tex. 1999).....................................................................5, 6

*Levitan v. A Pea in the Pod, Inc.*,
  No. 3:94-CV-0247, Final Judgment and Order of Dismissal
  With Prejudice, ECF No. 213 (N.D. Tex. Mar. 27, 1998)..........................................7

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) ..........................................................................9

*Marcus v. J.C. Penney Co., Inc.*,
  Civ. No. 6:13-cv-736, 2017 WL 6590976, at *6 (E.D. Tex. Dec. 18, 2017),
  *report and recommendation adopted*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018).....................7

*Matrixx Initiatives, Inc. v. Siracusano*,
  131 S. Ct. 1309 (2011)..................................................................................9

*Miller v. Global Geophysical Services Inc., et al.*,
  No. 4:14-cv-00708, Order, ECF No. 137 (S.D. Tex. Jan. 14, 2016) ...........................6

*In re Prudential-Bache Energy Income Partnerships Sec. Litig.*,
  No. 888, 1994 WL 202394 (E.D. La. May 18, 1994)...............................................6

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003).................................................................15

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) .......................................................................12

*Schwartz v. TXU Corp.*,
  No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ............................. *passim*

iv

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
 91 F. Supp. 2d 942 (E.D. Tex. 2000) ................................................................ *passim*

*In re Shell Oil Refinery*,
 155 F.R.D. 552 (E.D. La. 1993) ........................................................................... 7

*Singh v. 21Vianet Group, Inc.*,
 No. 2:14-cv-00894-JRG-RSP, 2018 WL 6427721 (E.D. Tex. Dec. 7, 2018) ........... 6

*Sprague v. Ticonic Nat'l Bank*,
 307 U.S. 161 (1939) ......................................................................................... 3, 4

*Stoetzner v. U.S. Steel Corp.*,
 897 F.2d 115 (3d Cir. 1990) ................................................................................ 15

*Tellabs, Inc. v. Makor Issues & Rights. Ltd.*,
 551 U.S. 308 (2007) ........................................................................................... 3

*Trustees v. Greenough*,
 105 U.S. 527 (1882) ........................................................................................... 3

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
 669 F.3d 632 (5th Cir. 2012) .......................................................................... 3, 4, 7

*Varljen v. H.J. Meyers & Co., Inc.*,
 No. 97 CIV. 6742 (DLC), 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) .................. 18

*Vassallo v. Goodman Networks, Inc.*,
 No. 4:15CV97-LG-CMC, 2016 WL 6037847 (E.D. Tex. Oct. 14, 2016) ............ 5, 6, 16

*In re Vioxx Prod. Liab. Litig.*,
 MDL No. 1657 Section L, 2013 WL 5295707 (E.D. La. Sept. 18, 2013) ................ 7

*In re Warner Commc'ns Sec. Litig.*,
 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ......... 13, 14

*Williams v. Go Frac, LLC*,
 No. 2:15-cv-00199-JRG, 2017 WL 3699350 (E.D. Tex. Apr. 26, 2017) ............ 6, 15, 18

*In re Xcel Energy, Inc.*,
 364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................ 12, 13

## STATUTES & RULES

N.D. Tex. Local Rule 7.1(b) ...................................................................................1

Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a), *et seq.* ....................4
   15 U.S.C. § 78u-4(a)(4) ...........................................................................18

Texas Securities Act ...................................................................................4, 9, 18
   Tex. Rev. Civ. Stat. Ann. Art. 581-33A ...........................................................9
   Tex. Rev. Civ. Stat. Ann. Art. 581-33D(7)........................................................4

## I.  INTRODUCTION

Counsel for Lead Plaintiff, Stephen N. Fox and Nora Fox JTWROS ("Plaintiffs"), have succeeded in obtaining a settlement in the amount of $2.35 million for the benefit of the Settlement Class in the above-captioned action.[1]  See the Declaration of Matthew M. Guiney in Support of Motion for Final Approval and for an Award of Attorneys' Fees ("Guiney Declaration") at ¶ 8. This is a highly-favorable recovery in the face of substantial risk, and is the result of Plaintiffs' Counsel's vigorous, persistent, and skilled efforts. In consideration of Plaintiffs' Counsel's efforts and the excellent results achieved,  Plaintiffs' Counsel hereby apply for an award of attorneys' fees in the amount of 30% of the Settlement Fund.[2]  Plaintiffs' Counsel also seeks reimbursement of: (i) $6,339.00 in litigation expenses that Plaintiffs' Counsel reasonably and necessarily incurred in prosecuting and resolving the Action; (ii) a $4,800 service award for the Lead Plaintiffs.  For all the reasons set forth herein, as well as those set forth in the accompanying Guiney Declaration of Matthew M. Guiney ("Guiney Declaration"), Plaintiffs' Counsel respectfully submit that the requested attorneys' fees, reimbursement of costs and expenses, and service awards, are fair and reasonable under the applicable standards and should, therefore, be awarded by the Court.[3]  In fact, not a single party has objected to any aspect of the requested fees, expenses or award.

---

[1] The "Settlement Class" is defined as: "all Persons who purchased or otherwise acquired (the "Company" or "UDF III") shares of United Development Funding III, L.P. securities in the Company's Dividend Reinvestment Plan ("DRIP") between November 21, 2013 and November 21, 2018, inclusive."

[2] Pursuant to Local Rule 7.1(b), on April 8, 2021, counsel for Defendants confirmed to Plaintiffs' Counsel that Defendants do not take any position on Plaintiffs' request for attorney fees.

[3] Because the date for Class Members to object or opt-out of the proposed Settlement is not until April 22, 2021, Plaintiffs' Counsel will submit an updated Proposed Final Order on May 6, 2021,

## II.     FACTUAL AND PROCEDURAL HISTORY

Plaintiffs hereby incorporate by reference the factual and procedural history set forth in the contemporaneously filed motion and supporting memorandum in support of final approval, and consequently do not repeat that history here.

## III.    THE COURT SHOULD APPROVE THE FEE REQUEST

### A.     Counsel Should be Compensated Based Upon the Benefits Created

The Supreme Court and the Fifth Circuit have consistently recognized that a "litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981) ("[I]t is well settled that the common benefit or common fund equitable doctrine allows for the assessment of attorneys' fees against a common fund created by the attorneys' efforts."); *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 962 (E.D. Tex. 2000) (same).

Courts have also recognized that in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on classes of persons and to discourage future misconduct of a similar nature. *See Jenkins v. Trustmark Nat'l. Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014) ("The doctrine serves the twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on

---

in connection with the reply papers in connection with this motion in order to accurately reflect any additional opt-outs between the filing of this document and the deadline.  A proposed final order was previously submitted in connection with Plaintiffs' motion for preliminary approval.

behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.") (internal quotation and citation omitted). The Supreme Court has emphasized that private securities cases, such as this one, are "an indispensable tool with which defrauded investors can recover their losses – a matter crucial to the integrity of domestic capital markets." *Tellabs, Inc. v. Makor Issues & Rights. Ltd.*, 551 U.S. 308, 320 n.4 (2007) (internal quotation and citation omitted). Thus, common-fund fee awards of the type requested here encourage meritorious class actions, and promote the private enforcement of, and compliance with, the securities laws.

### B. The Court Should Award Attorneys' Fees Using the Percentage Method

"In common fund cases, courts typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012). The Fifth Circuit affords "district courts the flexibility to choose between the percentage and lodestar methods" (*id.* at 644), with their analyses under either approach informed by the factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

The Supreme Court has consistently held that where a common fund has been created for the benefit of a class as a result of counsel's efforts, the award of counsel's fee should be determined on a percentage-of-the-fund basis. *See, e.g.*, *Trs. v. Greenough*, 105 U.S. 527, 532 (1882); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Sprague v. Ticonic Nat'l Bank*, 307

3

U.S. 161, 166-67 (1939); *Boeing*, 444 U.S. at 478-79. Indeed, as the Supreme Court declared in *Blum v. Stenson*, 465 U.S. 886 (1984), "under the common fund doctrine . . . a reasonable fee is based on a percentage of the fund bestowed on the class." *Id*. at 900 n.16.

The Fifth Circuit also has endorsed the percentage method, noting that "district courts in this Circuit regularly use the percentage method blended with a *Johnson* reasonableness check, and for some it is the preferred method." *Dell*, 669 F.3d at 643-44; *see also Shaw*, 91 F. Supp. 2d at 964 (percentage method superior to lodestar method). The percentage method "allows for easy computation" and "aligns the interests of class counsel with those of the class members." *Dell*, 669 F.3d at 643. Conversely, "[t]he lodestar method voraciously consumes enormous judicial resources, unnecessarily complicates already complex litigation, and inaccurately reflects the value of services performed." *Shaw*, 91 F. Supp. 2d at 964.

Although this is not a federal securities action, the Fifth Circuit also has recognized that the percentage method is especially appropriate in securities cases. "Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the [Private Securities Litigation Reform Act of 1995 ("PSLRA")] contemplates such a calculation." *Dell*, 669 F.3d at 643; *see also Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-M, 2018 WL 1942227, at *8 (N.D. Tex. Apr. 25, 2018) (Lynn, C.J.) (Noting that "The PSL[R]A expressly contemplates the percentage method, providing that '[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class'" and applying the percentage method.) (*quoting* 15 U.S.C. § 78u–4(a)(6)). Furthermore, the Texas Securities Act also provides for an award of attorneys' fees. "On rescission or as a part of damages, a buyer or a seller may also recover reasonable attorney's fees if the court finds that the recovery would be equitable in the

4

circumstances." Tex. Rev. Civ. Stat. Ann. Art. 581-33D(7).  Accordingly, the Court should apply the percentage method.

### C.   An Award of 30% is Appropriate Under the Percentage Method

Pursuant to the percentage method, the court "first determines the actual monetary value conferred to the class by the settlement" and then "applies a benchmark percentage to this value." *Vassallo v. Goodman Networks, Inc.*, No. 4:15CV97-LG-CMC, 2016 WL 6037847, at \*3-4 (E.D. Tex. Oct. 14, 2016). After setting the benchmark, the Court applies the *Johnson* factors "to determine whether the percentage should be adjusted upward or downward." *Id*. at \*4.

"The Manual for Complex Litigation states that '[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund.'" *Halliburton*, 2018 WL 1942227, at \*9 (citation omitted). Moreover, "district courts in the Fifth Circuit have awarded percentages of approximately one-third" or more as a reasonable contingency fee. *See In re Combustion, Inc.,* 968 F. Supp. 1116, 1133 (W.D. La. 1997).  *See also Halliburton,* 2018 WL1942227, at \*12 (holding that 33 1/3% contingency was "reasonable and fair"); *Burford v. Cargill, Inc.*, Civ. No. 05-0283, 2012 WL 5471985, at \*2-3 (W.D. La. Nov. 8, 2012) (customary contingency fee "ranges from 33 1/3% to 50%") (citation omitted); *accord Buettgen v. Harless*, Civ. No. 3:09-cv-00791-K, 2013 WL 12303194, at \*3 (N.D. Tex. Nov. 13, 2013) ("Complex commercial cases require a contingent fee between 30 and 40 percent of the gross recovery.").[4] Fees in the range of 25% to 33.34% "have

---

[4] *See also Jenkins*, 300 F.R.D. at 307 ("it is not unusual for district courts in the Fifth Circuit to award percentage of approximately one third") (citation omitted); *In re Combustion, Inc.*, 968 F. Supp. at 1133 ("district courts in the Fifth Circuit have awarded percentages of approximately one-third contingency fee").

been routinely awarded in class actions" and the average award is "around one-third of the recovery" regardless of which method was used. *Shaw*, 91 F. Supp. 2d at 972.[5]

In addition to finding awards of one-third or more reasonable, courts in the Fifth Circuit, including this Court, have routinely granted such awards. *See, e.g.*, *Halliburton*, 2018 WL 1942227, at *12 (awarding 33 1/3% of $100 million settlement, finding the requested fee "[c]ompared to other common fund cases in this Circuit" is not "an unusually large or high fee."); *Schwartz v TXU Corp.,* No. 3:02-CV-2243-K, 2005 WL 3148350, at *31 (N.D. Tex. Nov. 8, 2005) ("The vast majority of Texas federal courts . . . have awarded fees of 25%–33% in securities class actions."); *Harless*, 2013 WL 12303194, at *1 (awarding 30% of $33.75 million securities settlement, finding the requested fee to be "fair and reasonable" and "consistent with, if not less than, awards made in similar cases."); *Singh v. 21Vianet Group, Inc.,* No. 2:14-cv-00894-JRG-RSP, 2018 WL 6427721, at *1 (E.D. Tex. Dec. 7, 2018) (awarding of 33.3% of $9 million settlement, plus reimbursement of litigation expenses); *Williams v. Go Frac, LLC*, No. 2:15-cv-00199-JRG, 2017 WL 3699350, at *2–3 (E.D. Tex. Apr. 26, 2017) (awarding 35% of the settlement, finding the requested fee to be "fair and reasonable"); *Vassallo*, *2*016 WL 6037847, at *4, *6 (awarding approximately 39.78% of common fund); *Jenkins*, 300 F.R.D. at 307 (awarding one-third of settlement fund); *Miller v. Global Geophysical Services Inc., et al.*, No. 4:14-cv-00708, Order, ECF No. 137 (S.D. Tex. Jan.

---

[5] *See also City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, Civ. No. 6:12-1609, 2015 WL 965696, at *4 (W.D. La. Mar. 3, 2015) (33 1/3% contingency "is common in this geographic area" and "has been approved in other common fund cases"); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 445 (S.D. Tex. 1999) ("Class counsel and experts both reported to the Court that it is customary in large, complex commercial litigation for contingency fees to be set at 33 to 40%."); *Garza v. Sporting Goods Properties, Inc.*, Civ. No. SA-93-CA-1082, 1996 WL 56247, at *31 (W.D. Tex. Feb. 6, 1996) ("33 1/3% to 40% is the customary contingency fee range."); *In re Prudential-Bache Energy Income Partnerships Sec. Litig.*, No. 888, 1994 WL 202394, at *6 (E.D. La. May 18, 1994) ("Customary fees in common fund cases appear to range from 20% to 40%.").

14, 2016) (awarding one-third of settlement fund).[6] Accordingly, there is ample Fifth Circuit

precedent to support the requested fees of 30% of the Settlement Fund.

### D. The *Johnson* Factors Confirm the Reasonableness of the Requested Fee

In *Johnson*, the Fifth Circuit stated that the district court should consider several factors in setting

a fee award. These twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the
> issues; (3) the skill required to perform the legal service adequately;
> (4) the preclusion of other employment by the attorney because he
> accepted this case; (5) the customary fee for similar work in the
> community; (6) whether the fee is fixed or contingent; (7) time
> limitations imposed by the client or the circumstances; (8) the
> amount involved and the results obtained; (9) the experience,
> reputation, and ability of the attorneys; (10) the undesirability of the
> case; (11) the nature and length of the professional relationship with
> the client; and (12) awards in similar cases.

*Dell*, 669 F.3d at 642 n.25. "The relevance of each of the *Johnson* factors will vary in any particular

case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the

---

[6] *See also Barrera v. Nat'l Crane Corp.*, Civ. No. SA-10-CV-0196 NN, 2012 WL 242828, at *5
(W.D. Tex. Jan. 25, 2012) (awarding one-third); *In re DrKoop.com,* No. 1:00-CV-427-JRN, Order
and Final Judgment, ECF No. 48 (W.D. Tex. Nov. 14, 2001) (fee equal to 33 1/3% of total
recovery); *In re Shell Oil Refinery*, 155 F.R.D. 552, 575 (E.D. La. 1993) (awarding aggregate of
one-third); *Combustion*, 968 F. Supp. at 1136, 1142 (awarding 36% on a $127,396,000 settlement
fund); *Levitan v. A Pea in the Pod, Inc.,* No. 3:94-CV-0247, Final Judgment and Order of Dismissal
With Prejudice, ECF No. 213 (N.D. Tex. Mar. 27, 1998) (fee award equal to 40% of recovery);
*Branca v. First USA Paymentech, Inc.,* No. 3:97-CV-2507-L, Order and Final Judgment, ECF No.
59 (N.D. Tex. Jan. 4. 2001) (fee equal to 33 1/3% of total recovery); *Faircloth v. Certified Fin.
Inc.*, Civ. No. 99-3097 Section T (3), 2001 WL 527489, at *9 (E.D. La. May 16, 2001) (awarding
33.34% on a $1,534,321 settlement fund); *In re Vioxx Prod. Liab. Litig.*, MDL No. 1657 Section
L, 2013 WL 5295707, at *4–5 (E.D. La. Sept. 18, 2013) (awarding 33%); *Marcus v. J.C. Penney
Co., Inc*., Civ. No. 6:13-cv-736, 2017 WL 6590976, at *6 (E.D. Tex. Dec. 18, 2017), *report and
recommendation adopted*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018) (awarding 30% of $97.5
million securities settlement and concluding that "Lead Counsel's request for a fee of 30% is not
excessive. It is not unusual for attorneys' fees awarded under the percentage method to range
between 25% to 30% of the fund or more.").

lower court's discretion to apply those factors in view of the circumstances of a particular case." *TXU Corp.*, 2005 WL 3148350, at \*28. As demonstrated below, each of the relevant *Johnson* factors weighs in favor of the requested fee.

### i.   The Time and Labor Required

As detailed herein and in the Guiney Declaration, Plaintiffs' Counsel litigated this action for more than two years.  During the course of the litigation, counsel  conducted a comprehensive investigation into the allegedly wrongful acts, which included, among other things, review and analysis of Securities and Exchange Commission filings by United Development Funding III, review and analysis of public reports and news articles concerning Defendants; various verified complaint in shareholder derivative actions filed against Defendants by UDF III and UDF Development Funding IV and V ("UDF IV" and UDF V"); responded to each Defendants' numerous  motions to dismiss the pleadings in this case with extensive opposition briefing and several decisions of this Court denying in part, granting in part Defendants' motions; review a detailed PCAOB finding resulting from a regulatory investigatory process; and reviewed thousands of pages of documents produced by UDF including III's current financial position.  Counsel also defeated Defendants' motion to dismiss, briefed the class certification motion, conducted extensive settlement discussions, drafted all preliminary approval papers (including the plan of allocation) and drafted all final approval papers.  Guiney Declaration at ¶ 31; exhibits B and C.

The efforts that were required to complete these tasks, as well as others, were extensive and represented a significant risk, given the contingency-based nature of Plaintiffs' Counsel's representation.   To date, Plaintiffs' Counsel have spent over 1,267 hours litigating this case. Guiney Declaration at ¶ 39.  Plaintiffs' Counsel have also incurred \$6,339 in unreimbursed litigation expenses. ¶ 39.  In addition, the timing of the Settlement itself is a benefit that Plaintiffs'

Counsel have conferred on the Settlement Class. Achieving a beneficial outcome for the Settlement Class at this stage of the litigation weighs in favor of awarding the requested fee. *See TXU Corp.*, 2005 WL 3148350, at *29 (efficiency and effectiveness should be rewarded; awarding fee requested where action settled while motion to dismiss pending). The Court should, therefore, find that a settlement at this stage benefits the Classes, and that the labor and time Plaintiffs' Counsel invested in this case supports the requested fee.

### i. Novelty and Difficulty of the Issues

The second *Johnson* factor also favors granting Plaintiffs' Counsel's request for attorneys' fees. The claims in this litigation are for violations of the Texas Securities Act.  Here, although Plaintiffs believe that the allegations of the Complaint would ultimately translate into a strong case for liability, Plaintiffs are also aware that many risks were involved in proving their claims. Plaintiffs would have the burden of proving, among other things, that certain of the Defendants (a) made misrepresentations and omissions in connection with the sale of a security, (b) such misrepresentations and omissions were material, and that (c) Plaintiffs relied on such misrepresentations and omissions to their detriment and suffered economic losses as a proximate result. *See Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1317 (2011); *Billitteri v. Sec. Am., Inc.*, No. 09-CV-1568-F, 2010 WL 6785484, at *23 (N.D. Tex. July 26, 2010); *Aegis Ins. Holding Co., L.P. v. Gaiser*, No. 04-05-00938-CV, 2007 WL 906328, at *7 (Tex. App. Mar. 28, 2007); and Tex. Rev. Civ. Stat. Ann. Art. 581-33(A).

As a general matter, securities litigation is "notoriously difficult and unpredictable." *Maher v. Zapata Corp.,* 714 F.2d 436, 455 (5th Cir. 1983). Courts have noted that "a securities case, by its very nature, is a complex animal." *Clark v. Lomas & Nettleton Fin. Corp*., 79 F.R.D. 641, 654 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980).   In addition, Plaintiffs

9

faced numerous hurdles to establishing liability and damages and in certifying a class, especially when faced with the potential release of claims by certain Class Members.  Plaintiffs bear the burden of proving each of those elements.  Thus, if Defendants prevailed on any of the elements, it would be fatal to Plaintiffs' claims.  Indeed, difficult issues could have arisen over pleading and ultimately proving reliance which could have impacted the ability to certify a class.  Without a doubt, further litigation would be costly and time consuming, as Defendants would have likely continued to vigorously contest the merits for class certification, as well as liability, loss causation, and damages through summary judgment, trial, and appeal.

Finally, additional risk exists from the uncertainty surrounding Defendants' ability to pay. UDF's financial condition was unclear in the years leading up to and through the settlement negotiations.  Moreover, the UDF Defendants' insurance coverage was extremely limited and may be fully exhausted all together.  Guiney Declaration at ¶ 38.  Accordingly, for each of the foregoing reasons, this factor favors approval of the requested fee.

### ii. The Skill Required to Perform the Legal Service Adequately and the Experience, Reputation, and Ability of the Attorneys

The third and the ninth *Johnson* factors – the skill required and the experience, reputation, and ability of the attorneys – also support the requested fee award. As demonstrated by their respective firm resumes, Plaintiffs' Counsel have many years of experience in complex federal civil litigation, particularly in litigation of shareholder, securities, and other class actions.  *See* Guiney Declaration at exhibits A-C.  This experience benefited the Settlement Class.

The standing of opposing counsel should also be weighed in determining the fee, because such standing reflects the challenge faced by Plaintiffs' Counsel and "confirms the superior quality of their representation." *TXU Corp.*, 2005 WL 3148350, at *30. Here, Defendants were represented

by highly-experienced lawyers from firms with a national reputation for the tenacious defense of class actions, who vigorously and ably defended the Action for almost three years. Accordingly, these factors also support the requested fee.

### iii.    The Preclusion of Other Employment

Plaintiffs' Counsel spent over 1267 hours litigating this case on behalf of Plaintiffs and the Class. Guiney Declaration at ¶ 39. If the settlement is approved, counsel will spend additional time implementing and finalizing the settlement terms. This is time counsel could have devoted to other matters. Accordingly, this factor further supports the requested fee. *See Burford*, 2012 WL 5471985, at *3 ("The affidavits of Class Counsel prove that while this case did not preclude them from accepting other work, they were often times precluded from working on other cases due to the demands of the instant matter. . . . This factor weighs in favor of a substantial fee award.").

### iv.    The Customary Fee for Similar Work in the Community

As discussed in greater detail above, the 30% requested fee is well within the range of customary fees. *See, e.g.*, *Halliburton*, 2018 WL 1942227, at *12 ("The 33 1/3% requested by Class Counsel is within the range of typical awards, and is not the highest fee awarded in securities class action cases."), and *9 & n.8 (collecting cases and stating "numerous courts in this Circuit have awarded fees in the 30% to 36% range."); *Shaw*, 91 F. Supp. 2d at 972 ("Empirical studies show that ... fee awards in class actions average around one-third of the recovery"); *TXU Corp.*, 2005 WL 3148350, at *31 ("The vast majority of Texas federal courts . . . have awarded fees of 25%–33% in securities class actions."); *Harless*, 2013 WL 12303194, at *1 (the 30% fee award is "fair and reasonable" and "consistent with, if not less than, awards made in similar cases."); *Garza*, 1996 WL 56247, at *31; *Burford*, 2012 WL 5471985, at *3. Therefore, this factor supports approving the requested fee.

### v.   Whether the Fee is Fixed or Contingent

For more than two years, Plaintiffs' Counsel undertook this Action on a contingency-fee basis, carrying both the substantial out-of-pocket costs of litigation and the risk of not being paid for their services or reimbursed for their costs in connection with the litigation. Contingency risk alone is a factor supporting the requested fee. As the Fifth Circuit has stated, "[l]awyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981), *overruled on other grounds by Int'l Woodworkers of Am., AFL-CIO & Its Local No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986).

Further, the risk of loss in this case was not illusory. As discussed above, securities fraud cases are extremely complex, and success is never assured – especially in the Fifth Circuit. This case was no different. Plaintiffs' Counsel faced significant challenges in terms of establishing liability and damages.  And, even if Plaintiffs had prevailed at trial, there was no guarantee that a jury would award a judgment greater than the Settlement, or that they would have survived post-trial motions or an appeal. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co*., 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV-UNGARO, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law because there was insufficient evidence to support a finding of loss causation), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *In re*

12

*Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (court entered judgment notwithstanding the verdict for the individual defendants and ordered a new trial with respect to the corporation). As the court in *Xcel* recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc*., 364 F. Supp. 2d 980, 994 (D. Minn. 2005).

Consequently, this factor weighs in favor of approving the fee request. *See Harless,* 2013 WL 12303194, at *3 ("The risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. Any fee or expense award has always been at risk and completely contingent on the result achieved. Thus, the contingent nature of the litigation supports the requested percentage."); *Jenkins*, 300 F.R.D. at 309 ("[r]ecognizing the contingent risk of nonpayment in [class action] cases, courts have found that class counsel ought to be compensated . . . for risk of loss or nonpayment") (citation and internal quotation omitted).

### vi.    Time Limitations Imposed by the Client or the Circumstances

This factor does not pertain to this case.

### vii.    The Amount Involved and the Results Obtained Support Approval

The maximum potential recovery is difficult to calculate because it depends on assumptions and estimates about the current value of the UDF III shares acquired in the DRIP for $20 per share. Class members purchased 1,076,373.83 DRIP shares during the Class Period. If those shares are now assumed worthless, then the maximum damages are $20 per share or $21,527,476.60. Under that scenario, this settlement of $2.35 million recovers 10.92% of those damages. That is a very respectable settlement. If UDF III shares are now worth only $10 per share, damages are $10,763,738.30. Under that scenario, this settlement recovers 21.83% of damages. Guiney

13

Declaration at ¶ 34. An outstanding result considering precedent. The substantial percentage of maximum damages recovered when viewed in the context of the risks and the uncertainties involved in continued litigation, weighs heavily in favor of approving the Settlement. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad non actionable factors such as general market conditions").

A recovery within the range of 10.92% to 21.83% is above the average recovery in other securities class action settlements with similar total damage amounts. Guiney Declaration at Exhibit F (excerpts from Stefan Boettsich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review* (NERA 29 Jan. 2018)) at 37, Fig. 28 (the median ratio of settlements between 1996 and 2017 to investment losses was 8.4% for cases alleging investor losses of between $20 and $49 million); and at 38, Fig. 29 (the median ratio of settlements to investor losses between 2008 and 2017 ranged from 1.3% to 2.7%); *see also In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 804 (S.D. Tex. 2008) ("The typical recovery in most class actions generally is three-to-six cents on the dollar."); *In re Giant Interactive Grp., Inc. Sec. Litig.,* 279 F.R.D. 151, 162-63 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses"); *Halliburton*, 2018 WL 1942227, at \*5 (recognizing approval of securities class action settlement that represented two percent of aggregated recovery). Accordingly, this factor supports approval of the requested fee.

      **viii.**    **The Undesirability of the Case Supports Approval**

14

The undesirability of a case can be a factor in justifying the award of a requested fee. Securities cases have been recognized as "undesirable" due to the elevated risks, required lengthy investigations through informal discovery, high out-of-pocket costs, and a possibility of no recovery. *See Halliburton*, 2018 WL 1942227, at *12 ("[T]he 'risk of non-recovery' and 'undertaking expensive litigation against . . . well financed corporate defendants on a contingent fee' has been held to make a case undesirable, warranting a higher fee."); *Harless*, 2013 WL 12303194, at *3 (similar). This was never an easy case and the risk of no recovery was always high. When Plaintiffs' Counsel undertook representation of Plaintiffs and the Settlement Class in this Action, it was with the knowledge that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. *See Harless*, 2013 WL 12303194, at *3 ("The risks faced by counsel must be assessed as they existed at the time counsel undertook the litigation and not in light of the settlement ultimately achieved."). Consequently, this factor weighs in favor of approval.

### ix.   Nature and Length of the Professional Relationship with the Client

Plaintiffs' Counsel represented the Plaintiffs since the initiation of the action.  Guiney Declaration at exhibit E.  Since that time, the Plaintiffs have been actively involved in all facets of the litigation.  *Id*.  This factor also weighs in favor of approval.

### x.   Awards in Similar Cases

As discussed above, the requested fee of 30% is consistent with awards granted in other complex class action cases. Hence, this factor supports the requested fee award.

### xi.   Other Factors

Although not a *Johnson* factor, many courts have recognized that the absence, or a minimal number, of objections to a fee request is significant evidence that the requested fee is fair. *See Go*

*Frac, LLC*, 2017 WL 3699350, at \*2-3 (awarding 35% of the settlement where class members had notice of the requested fees and did not object); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (even when 29 members of a 281 person class objected, the response of the class as a whole "strongly favors [the] settlement"); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 515 (W.D. Pa. 2003) ("the absence of substantial objections by other class members to the fee application supports the reasonableness of Lead Counsels' request"). Here, the notice program informed potential Class Members that Plaintiffs' Counsel would request attorneys' fees of up to 30% of the Settlement Fund.  Guiney Declaration at ¶ 5, exhibit E, (p. 2 of attachment, citing notice advising class members).   Although the date for filing objections is April 22, 2021, Plaintiffs' Counsel are not aware of any objections to the fee request or Settlement as of the date of this filing. Guiney Declaration at ¶ 32.

In sum, all of the applicable *Johnson* factors support Plaintiffs' Counsel's request for attorneys' fees of 30% of the Settlement Fund.

### E.     A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

In addition to applying the percentage approach to determine attorneys' fees in common fund cases, courts in this Circuit often perform a lodestar cross-check to confirm that the requested fee is reasonable. *Vassallo*, 2016 WL 6037847, at \*3. However, the lodestar crosscheck, while useful, should not displace a district court's primary reliance on the percentage method. *See Halliburton*, 2018 WL 1942227, at \*8-\*9 ("The lodestar cross-check is usually applied 'to avoid windfall fees' . . . [D]istrict courts need not scrutinize counsel's billing records with the thoroughness required were the lodestar method applied by itself.") (citation omitted).

"Under [the lodestar] method, the court takes the recorded hours worked by the attorneys and multiplies them by a reasonable hourly rate," then applies a multiplier upward or downward.

16

*Id.* at *9. Here, the cumulative time expended by Plaintiffs' Counsel is more than 1,267 hours. Guiney Declaration at ¶ 39. Based on current rates, the resulting lodestar for the services is $946,575.50. *See Halliburton*, 2018 WL 1942227, at *13 (calculating rates using class counsels' firms' current rates).[7] The requested fee thus equates to a ***negative multiplier*** of .74. (That is, 30% of the settlement fund is $705,000, as compared to a collective lodestar of over $946,000). This multiplier is well within the range of reasonableness, because multipliers of "1 to 4 [are] typically approved by courts within [the Fifth] circuit" *Burford*, 2012 WL 5471985, at *6 n.1; *see also In re Enron Corp. Sec.*, 586 F. Supp. 2d at 751 & n.20 (awarding percentage fee equal to a multiple of 5.2 times lodestar, and stating that "[m]ultiples from one to four are frequently awarded in common fund cases when the lodestar method is applied") (citation and internal quotation omitted); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 333 (W.D. Tex. 2007) (stating the average range of multipliers in class actions is 1.0 to 4.5 and "multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5"); *Di Giacomo v. Plains All Am. Pipeline*, Civ. No. H-99-4137, 2001 WL 34633373, at *11 (S.D. Tex. Dec. 19, 2001) (stating same and approving 5.3

---

[7] The hourly rates, which are Plaintiffs' Counsel's current rates and have been accepted in other securities litigation, are reasonable in light of prevailing market rates for lawyers with comparably high levels of experience and expertise in securities litigation and other complex class action litigation. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1087-88 (S.D. Tex. 2012) (noting attorneys' hourly rates should be judged in relation to "'prevailing market rates for lawyers with comparable experience and expertise' in complex class-action litigation" and finding "[a]n attorney's requested hourly rate is *prima facie* reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates[,] and the rate is not contested") (citation omitted; second alteration in original). Plaintiffs' Counsel submit that their rates are comparable or less than those used by peer defense-side law firms, as well as plaintiff-side law firms, litigating matters of similar magnitude.

17

multiplier). Thus, the lodestar cross-check confirms that the requested attorneys' fees are fair and reasonable.

**IV.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**

"Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement." *Halliburton*, 2018 WL 1942227, at \*14 (citation and internal quotation omitted). Here, Plaintiffs' Counsel expended $6,339 in out-of-pocket costs, which are divided into categories and itemized in the declarations submitted by each individual firm.  Guiney Declaration at ¶ 42, exhibits B-C.

These expenses are well-documented, based on the books and records maintained by each firm, and reflect the costs of prosecuting this Action. Moreover, these costs were reasonable and necessary.  Courts routinely permit the reimbursement of similar expenses. *Halliburton*, 2018 WL 1942227, at \*14. Additionally, the Notice informed potential Class Members that Lead Counsel would seek reimbursement of expenses up to $50,000, and, to date, no objection to the expense request has been filed.  The requested expenses should, therefore, be awarded. *See Go Frac, LLC*, 2017 WL 3699350, at \*2-3 (awarding expenses in the absence of objections).

**V.    THE COURT SHOULD AWARD A SERVICE FEE**

The PSLRA, 15 U.S.C. §78u-4(a)(4), permits Lead Plaintiff to recoup litigation costs (including lost wages) incurred as a result of his having served as a lead plaintiff in a securities class action. Reimbursement of such costs is allowed because it "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co., Inc.*, No. 97 CIV. 6742 (DLC), 2000 WL 1683656, at \*5 n.2 (S.D.N.Y. Nov. 8, 2000); *Burford*, 2012 WL 5471985, at \*6.  Although this is not a PSLRA case, Plaintiffs respectfully submit that the same

18

logic should apply to an action alleging violations of the Texas Securities Act.  Here, Lead Plaintiff respectfully requests reimbursement in the amount of $4,800 for the time he expended on behalf of the Class. *See* Guiney Declaration at Exhibit D.  This request is reasonable, and although Class Members were advised that the Lead Plaintiffs may request an award of up to $5,000, no Class Member has objected to date.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel request the Court grant the Motion in its entirety.

Dated:        April 8, 2021

**WOLF HALDENSTEIN**
**ADLER FREEMAN & HERZ LLP**

By:  /s/ Matthew M. Guiney
MATTHEW M. GUINEY
270 Madison Avenue
New York, NY 10016
Tel: 212-545-4600
Fax: 212-686-0114
guiney@whafh.com

**SQUITIERI & FEARON, LLP**
LEE SQUITIERI
32 East 57th Street
12th Floor
New York, New York 10022
Telephone:  (212) 421-6492
lee@sfclasslaw.com

JOE KENDALL
State Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Telephone:  (214) 744-3000

19

Facsimile: (214) 744-3015
jkendall@kendallawgroup.com

*Counsel for Plaintiffs*